IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM FIRE & | : | CIVIL ACTION |
| CASUALTY CO. | : | |
| vs. | : | |
| | : | NO. 06-cv-2960 |
| THE ESTATE OF | : | |
| THOMAS W. MEHLMAN, and | : | |
| WILLIAM F. MEHLMAN, Executor | : | |
| of the Estate of Thomas Mehlman, and | : | |
| MARIA IACONO | : | |

**MEMORANDUM OPINION AND ORDER**

GOLDEN, J.                                                                                                      MARCH 27, 2008

      Before the Court are three cross-motions for summary judgment in a declaratory judgment action. Plaintiff State Farm, an Illinois insurance company, seeks a declaration that it does not have an obligation to defend or indemnify the estate of Thomas W. Mehlman in an underlying tort action filed by defendant Maria Iacono underway in the Court of Common Pleas of Delaware County. Mehlman held a homeowner's policy and umbrella policy with State Farm, and State Farm is presently defending the underlying action under a reservation of rights. The Mehlman Estate and Iacono filed briefs in opposition to State Farm's motion, as well as motions seeking a declaration that State Farm did have a duty to defend and indemnify the estate. For the reasons that follow, the Court concludes that State Farm does not have a duty to defend or indemnify under the homeowner's policy, and that the allegations of negligence in the Iacono Complaint trigger a duty to defend under the umbrella policy at least until such time as the factual record can show that Dr. Mehlman's purported state of intoxication did not negate any intent on his part.

**Standard of Review**

Summary judgment should be granted to the defendant if the record, including pleadings, depositions, affidavits, and answers to interrogatories demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. See also *Sommer v. The Vanguard Group*, 461 F.3d 397, 403-04 (3d Cir. 2006).

The Court is charged with interpreting an insurance contract, giving words their plain meaning and interpreting any ambiguities against the drafter of the contract, the insurer. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983); *Stump v. State Farm Mutual Automobile Ins. Co.*, 564 A.2d 194, 196 (1989); *C.H. Heist Caribe Corp. v. American Home Assurance Corp.*, 640 F.2d 479, 480 (3d Cir. 1981). A term is ambiguous when "reasonably intelligent people on considering it in the context of the entire policy would honestly differ as to its meaning." *Britamco Underwriters v. C.J.H., Inc.*, 845 F. Supp 1090, 1093 (E.D. Pa. 1994), *aff'd* 37 F.3d 1485 (3d Cir. 1994) (internal citations omitted).

This dispute first concerns the duty to defend, which is distinct from and broader than the duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). An insurer has a duty to defend if the alleged injury, as described by the facts stated in the complaint, might potentially be within the scope of the policy. *United Services Auto Assoc. v. Elitsky,* 517 A.2d

982 985 (Pa. Super. Ct. 1986). In determining whether there is a duty to defend, a court may look only at the factual allegations in the complaint. *Kvaerner Metals Div. of Kvaerner U.S. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). If coverage will depend on facts to be determined, the insurer owes a duty to defend "until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage." *Safeguard Scientifics v. Liberty Mutual Ins. Co.*, 766 F. Supp. 324, 329 (E.D. Pa. 1991) (internal citations omitted).

The initial burden of showing that claims fall within the policy's coverage lies with the insured. *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F.Supp. 2d 488, 495 (E.D. Pa. 2006) (internal citations omitted). The burden of demonstrating the applicability of a policy exclusion rests with the insurance company. *Allstate Ins. Co. v. Brown*, 834 F. Supp. 854, 857 (E.D. Pa. 1993).

**Factual Background**[1]

Defendant Iacono's underlying complaint in this case alleges five counts against the estate of Thomas Mehlman: intentional infliction of emotional distress; negligent infliction of emotional distress; assault with a firearm; negligence; and punitive damages. These allegations stem from an incident that took place in Delaware County on March 5, 2005. (Compl., ¶¶10, 14). Mehlman allegedly drank multiple servings of alcohol at Ristorante La Locanda, a defendant in the underlying action, during the afternoon of March 5, 2005. (Compl., ¶15). At approximately 4:30 p.m., Mehlman allegedly left the restaurant to search for his girlfriend, Phyllis Sauter. (Compl., ¶11, 19). Sauter was in Colorado. (Compl., ¶26). Her tenant, Maria

---

[1] The complaint referenced in this section is an amended complaint filed by Maria Iacono in the Delaware County Court of Common Pleas on October 19, 2006.

Iacono, was home. (Compl., ¶22).

Mehlman entered Iacono and Sauter's home. (Compl, ¶21). When Iacono attempted to explain that Sauter was not there, Mehlman began using increasingly threatening and abusive language to ask where she was. (Compl., ¶23). Iacono asked him to leave, but he would not. (Compl., ¶24). Mehlman was carrying a backpack, which, unbeknownst to Iacono, contained a handgun. (Compl., ¶20).

Iacono attempted to leave her home, walking toward her car. (Compl., ¶28). Mehlman approached the vehicle, aimed his gun at defendant's head, and fired. (Compl., ¶29, 30). The gun misfired, and Iacono screamed for Mehlman not to hurt her. (Compl., ¶31). In her agitated state, Iacono crashed her car into a tree. (Compl., ¶32). Mehlman leapt onto the hood of her car, pointed the gun at her again, and fired. (Compl., ¶32). The gun misfired again. (Compl., ¶32). Mehlman then ran to the passenger side of the car and attempted to break the window with his elbow (Compl., ¶33). He aimed at Iacono again and pulled the trigger; the gun misfired again. (Compl., ¶33). Iacono successfully drove away, with Mehlman still in pursuit. He fired a final shot, which did not strike Iacono. (Compl., ¶34, 35).

Mehlman returned to the house, where he killed himself with a gunshot to the head. (Compl, ¶37, 40). A SWAT team recovered his body at approximately 11:30 p.m., but his time of death was estimated as 5:00 p.m. (Compl., ¶39, 40). Toxicology reports indicate that, six hours after he left the restaurant where he consumed alcohol, Mehlman's blood alcohol content was over .21. (Compl., ¶41, 42).

*The language of the policies*

Mehlman's homeowner's policy provides $500,000 in personal liability coverage "[i]f a claim is made or a suit is brought against an insured because of bodily injury or property damage to which this coverage applies, caused by an occurrence." (Section II, page 15). The policy's definitions of "bodily injury" and "occurrence" are set forth in full below:

> "Bodily injury" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.
>
> Bodily injury does not include...emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.
>
> "Occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in: bodily injury; or property damage; during the policy period.

Homeowner's policy p. 1-2.

The umbrella policy provides $1,000,000 in coverage for "loss", and includes the following definitions:

> "Bodily injury" means physical injury, sickness, disease, emotional distress or mental injury to a person.
>
> "loss" means: an accident, including injurious exposure to conditions, which results in bodily injury or property damage during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one loss.

Umbrella policy, policy endorsement, p 1-2, ¶¶ 17, 6.

In addition, both policies enumerate exclusions based on the conduct of the insured. The homeowner's policy excludes coverage for bodily injury (1) "which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured." Homeowner's policy p. 16. The umbrella policy excludes for bodily injury "a. which is either

5

expected or intended by you; or b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed." Umbrella policy, policy endorsement, p 3, ¶2.

## The Homeowner's Policy

The Court begins with an analysis of the homeowner's policy. The language of the policy is clear–it will provide coverage only for bodily injury, which does not include "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." In her complaint, Iacono alleges that she suffered "severe nervous shock, severe mental, physical and emotional pain, which has required hospitalization and continued medical and psychiatric care for her condition, post-traumatic stress disorder and continues to suffer psychological trauma and physical manifestation thereof; including headaches, gastrointestinal disorders, bowel and bladder dysfunction, depressed appetite, muskoskeletal tension related and myofacial and other pain and other physical ailments from the incident to this date." (Compl., ¶43). Thus, plaintiff identifies her condition as post-traumatic stress disorder, and her physical complaints as the manifestations of that condition.

The Court must read the insurance policy to give each word its usual meaning. Thus, the Court reads the policy as clearly excluding from coverage mental and emotional injury that result in physical distress "unless it arises out of actual physical injury to some person." Here, Iacono complains of a mental injury, post-traumatic stress disorder, that has caused physical distress. Iacono argues that she was injured physically when her car crashed into a tree as she fled from Mehlman; her complaint, however, never specifically alleges that she was injured by the crash.

The Court may only consider the allegations contained in her complaint when determining whether there is a duty to defend.

In addition, Iacono claims that the language defining bodily injury is ambiguous because it does not specifically exclude physical manifestations of emotional distress. The Court concludes, however, that reasonable people could not disagree as to the meaning of the definition of a bodily injury under the homeowner's policy. The policy's language insisting that mental distress is covered only if it stems from physical injury clearly precludes coverage for physical distress stemming from mental injury. Thus, State Farm deserves the benefit of its bargain, and it has no duty to defend under the homeowner's policy because Iacono did not suffer a physical injury nor does it have any duty to indemnify.

## The Umbrella Policy

Although State Farm argues that it has no duty to defend or indemnify under the umbrella policy, the Court concludes that at this point in the proceedings the allegations of negligence in Iacono's complaint trigger a duty to defend. State Farm advances five theories to support the argument against its duty to defend: 1) the complaint does not allege a "loss" under the policy; 2) the exclusion for expected or intended conduct applies; 3) the counts of Iacono's complaint alleging negligence cannot "create" coverage; 4) allegations of alcohol consumption cannot convert intentional conduct into an accident; and 5) the exclusion for willful and malicious acts also applies to bar coverage.[2] The Court will address these intertwined issues in turn.

---

[2] State Farm notes that no Pennsylvania cases have interpreted a willful and malicious acts exclusion separately from an exclusion for intended and expected conduct. Given this precedent, the Court will not conduct a separate analysis.

**1) Does the Complaint Allege a Loss under the Policy?**

State Farm argues that the incident involving Mehlman cannot qualify as a loss because it did not involve an "accident," which is central to the definition of loss under the umbrella policy. State Farm claims that all of the behavior attributed to Mehlman in the complaint is purely volitional. Although State Farm may ultimately be proven correct, at this stage the Court cannot agree that Mehlman's behavior was entirely volitional, or that there are no circumstances under which he might be found to have been negligent.

State Farm cites two cases to stand for the proposition that an intentional act cannot be considered an "accident" triggering coverage. *Gene's Restaurant v. Nationwide Ins. Co.,* 548 A.2d 246, 247 (Pa. 1988); *Sclabassi v. Nationwide Mut. Fire Ins. Co.*, 789 A.2d 699, 703 (Pa. Super. Ct. 2001). Both cases involve intentional torts–assault and battery and fraud and deceit, respectively. Neither case is dispositive here, however, because the defendants were not intoxicated. Although intoxication does not automatically negate an insured's ability to formulate intent, it is a factor which a jury may consider in determining intent. *Nationwide Ins. Co. v. Glynn*, 2003 U.S. Dist. LEXIS 8163, at *13 (E.D. Pa. May 14, 2003).

In the instant case, Mehlman was clearly intoxicated. His blood alcohol level was measured at .21, more than twice the legal limit for the safe operation of a motor vehicle, six hours after his last drink. It is not clear what intent, if any, he formulated before committing his disturbing acts against Iacono. Before the factual record is developed, the Court cannot conclude that all of his actions were "volitional," as opposed to negligent, as asserted by State Farm.

Therefore, the Court concludes that the episode between Iacono and Mehlman may have included an "accident" and thus a loss under the umbrella policy, triggering the duty to defend.

**2) Does the Exclusion for Expected and Intended Conduct Apply?**

The umbrella policy contains an exclusion for harm expected or intended by the insured, which State Farm asserts should apply in this case and bar coverage for Mehlman. Because of Mehlman's extreme intoxication during the events at issue, the Court concludes that this exclusion does not apply.

As a matter of law, an intended harm exclusionary clause in an insurance policy is ambiguous, and thus must be construed against the insurer. *Elitsky*, 358 Pa. Super. Ct. at 371. The exclusion for intentional acts applies only when the insured both intends to act, and causes harm of the "same general type as that which they set out to inflict." *Id.* at 373. Courts presume that "an insured intends an injury if he desired to cause the consequence of his act or if he acted knowing such consequences were substantially certain to result." *Id.* at 375. A factfinder must consider "imbibed intoxicants" when determining if an insured could formulate intent. *Stidham v. Milvale Sportsman's Club*, 421 Pa. Super. Ct. 548, 563 (Pa Super. Ct. 1992). If an actor is too intoxicated to formulate intent, his or her acts cannot be intentional. *Id.* (internal citations omitted).

State Farm cites to a number of cases in which assaults or other intentional acts of violence have been excluded from insurance coverage; none of the cases concern an intoxicated actor, however, and their persuasive or precedential value is thus limited. In fact, in one cited case, the court was careful to note that no intoxicating substance played a role in the violent

episode before determining that the intentional act exclusion applied. *Germantown Ins. Co. v. Martin*, 407 Pa. Super. Ct. 326, 332-33 (Pa. Super. Ct. 1991). *Martin* concerned a murder/suicide in which a gunman shot three victims, two fatally, and the court held that the insurer had no duty to defend the insured because his actions were intentional. *Id.* at 328, 332. In addition to remarking on the insured's sobriety, the court specifically noted that the insured shot his victims "rapidly but not wildly," and that he had clearly premeditated his crime, bringing extra ammunition and remarking to a friend a week before that he desired to shoot people. *Id.* at 332-33.

In contrast, in the instant case, Mehlman was intoxicated. His behavior, unlike the shooter's in *Martin*, was wild. There is no suggestion in the record that he premeditated his arrival at Iacono's home or his violent outburst; it is not clear that he and Iacono had any relationship whatsoever before the events of March 5, 2005. Given the facts as stated in the complaint, especially Mehlman's impairment, the Court cannot conclude what harm Mehlman intended to cause, or whether he acted knowing that harm was substantially certain to befall Iacono. As a result, the Court cannot apply the intentional act exclusion.

**3. Do the Counts against Mehlman Alleging Negligence "Create" Coverage?**

State Farm points to Pennsylvania cases in which courts have rejected a negligence "frame" of presumably intentional acts described in a complaint when determining a duty to defend. *See Mutual Benefit Ins. Co. v. Haver*, 725 A.3d 743, 745 (Pa. 1999). Restated, an insured's liberal use of the word "negligence" in a complaint that clearly describes only intentional acts does not require a court to find a duty to defend. *Id.*

Once again, although State Farm's cited cases describe tortious and criminal conduct,

10

they do not describe an insured who was intoxicated. Thus, they do not provide guidance on the problem of how to approach Mehlman's intent and state of mind. In contrast, case law includes numerous examples of a court's affirmation of an insurer's duty to defend when parties plead in the alternative counts of negligence and intentional torts committed by an intoxicated person. *McCaffrey v. Travelers Ins.*, 2003 U.S. Dist. LEXIS 4685 (E.D. Pa. Mar. 4, 2003); *Allstate Ins. Co. v. Brown*, 834 F. Supp. 854, 855 (E.D. Pa. 1993); *Terra Nova Ins. Co. v. 900 Bar*, 876 F.2d 1213 (3d Cir. 1989).

From the perspective of insurers, the leading case on intentional torts and the duty to defend is *Gene's Restaurant. Gene's Restaurant, Inc. v. Nationwide Ins. Co*, 519 Pa. 306 (1988). In that case, a patron of the insured restaurant asserted in her complaint that she was "willfully and maliciously assaulted." *Id.* at 309. The Court concluded that the willful and malicious assault in the complaint could not be an accident that triggered coverage. *Id.* As other courts have noted in analyzing *Gene's Restaurant*, the complaint at issue "alleged solely an intentional act and contained no allegations of negligence on the part of its insured." *Nationwide Mut. Ins. Co. v. Pipher*, 140 F.3d 222, 225 (3d Cir. 1998).

Here, in contrast, Iacono explicitly pled negligence and intentional counts in the alternative. More importantly, the Court is not convinced that the episode described in Iacono's complaint cannot be interpreted to be the product, at least in part, of negligence. The record does not establish, thus far, whether Mehlman's actions were motivated by a wish to frighten Iacono or by a combination of alcohol-induced confusion or even hallucination. Given Mehlman's extreme state of agitation and drunkenness, the Court is unable to conclude that all of his actions were intentional, and thus not negligent. The Court therefore finds that, even though a party

cannot artfully plead into coverage, the Iacono complaint contains facts under which a finding of negligence is possible.

**4. Can Alcohol Consumption Convert Intentional Conduct to Negligence?**

State Farm argues that Mehlman's drunkenness could not transform his conduct from an intentional tort into negligence. The bulk of the case law suggests, however, that alcohol consumption can be a factor in determining an insured's intent. *Stidham*, 618 A.2d 945; *Nationwide Mut Ins. Co. v. Hassinger*, 473 A.2d 171, 176 (Pa Super. Ct.1984); *State Farm Fire & Cas. Co. v. Dunlavy*, 197 F.Supp 2d. 183, 192 (E.D. Pa. 2001); *Nationwide Ins. Co. v. Glynn*, 2003 U.S. Dist. LEXIS 8163, at *12-13 (E.D. Pa. May 14, 2003). Thus, because the Court cannot be sure what Mehlman's intent was, it rejects State Farm's framing of this issue as the transformation of an intentional tort into negligence.

State Farm points to two cases in which a Pennsylvania Court found that an insured committed an intentional tort even while demonstrably drunk, *Martin* and *Esmond*. *State Farm Mut. Auto Ins. v. Martin,* 442 Pa. Super. Ct. 442, 446 (Pa. Super. Ct. 1995); *Esmond v. Liscio*, 209 Pa. Super. Ct. 200, 209 (1966). Upon examination, these cases provide support for the Court's decision to find a duty to defend, at least until facts emerge regarding Mehlhman's intent. The discussion of alcohol use and intent in *Martin* is limited to a brief citation to the *Esmond* case, which merits further scrutiny. *Martin,* 442 Pa. Super. Ct. at 446. *Esmond* held an intoxicated insured was not entitled to coverage for an assault he committed, because "while voluntary intoxication may so cloud the mind as to deprive it of the power of premeditation and deliberation, it will not prevent the formation of the general intent necessary for the commission of an assault and battery." *Esmond*, 209 Pa. Super. Ct. at 209. The court reached this

conclusion, however, only after examining a well-developed factual record.  In determining that the insured had committed an intentional tort, the court specifically cited the absence of medical evidence of severe intoxication in the record.  *Id.* at 208.  Moreover, the insured actually testified at a hearing that he intentionally assaulted his victim.  *Id.*  In the instant case, no such factual record currently exists to establish the insured's intent.  Thus, the Court is unwilling to discount the effect of alcohol consumption on Mehlman's intent.

The Court also notes that had it wished to protect itself from the duty to defend an intoxicated insured, State Farm could have added more specific language to its policy to expand and clarify its exclusions.  State Farm cited cases in which explicit exclusions for criminal acts, or for specific states of mind, relieved the insurer of the duty to defend.  See, e.g., *Allstate Ins. Co. v. Ervin*, 2006 U.S. Dist. LEXIS 56802, at *7 and *10 (E.D. Pa. Aug. 16, 2006) (no duty to defend intoxicated insured involved in an assault when explicit policy language excluding criminal acts); *Allstate Ins. Co. v. Sheridan*, 2003 U.S. App. 26069, at *4-*5 (no duty to defend mentally ill insured when policy excludes coverage for conduct undertaken even when "such insured person lacks the mental capacity to govern his or her own conduct.")  Such clauses were not included in Mehlman's contract.

Finally, State Farm encourages the Court to examine and analogize two cases in which courts determined an actor's mental illness did not negate his or her intent, relieving the insurer of a duty to defend.  The Court notes that the most recent of these cases specifically distinguishes between alcohol consumption, which can negate intent, and mental illness, which cannot.  *Donegal Mutual Ins. v. Baumhammers*, 893 A.2d 797, 823 (Pa Super. Ct. 2006).  Thus, the Court will not compare cases that concern mental illness with the instant case.

In conclusion, the Court holds that State Farm does not have a duty to defend or indemnify under the homeowners policy, and that the allegations of negligence in the Iacono Complaint trigger a duty to defend under the umbrella policy at least until such time as the factual record can show that Dr. Mehlman's purported state of intoxication did not negate any intent on his part.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY CO. | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 06-cv-2960 |
| THE ESTATE OF THOMAS W. MEHLMAN, et al. | : | |

**ORDER**

AND NOW, this 27th day of March, 2008, the following is hereby ORDERED:

1.  Plaintiff's motion for summary judgment (Docket No. 12) is GRANTED in part and DENIED in part.

2.  The motion for summary judgment of defendants Estate of Thomas W. Mehlman and William Mehlman, Executor, (Docket No. 13) is GRANTED in part and DENIED in part.

3.  Defendant Maria Iacono's motion for summary judgment (Docket No. 15) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED and the Court DECLARES that with respect to the action pending in the Court of Common Pleas of Delaware County, *Marie Iacono v. Estate of Thomas W. Mehlman, et al.* No. 05-12989:

(a) the Iacono Complaint does not allege bodily injury as defined by the Homeowner's Policy and thus plaintiff does not have a duty to defend or indemnify under the Homeowner's Policy;

(b) the allegations of negligence in the Iacono Complaint trigger a duty to defend under the Umbrella Policy, at least until such time as the factual record can show that Dr. Mehlman's purported state of intoxication did not negate any intent on his part.

BY THE COURT:

*/s/ THOMAS M. GOLDEN*
THOMAS M. GOLDEN, J.